Judge Marshall
delivered the Opinion of the Court.
This bill was filed, in November, 1830, by James Lyme and Polly his wife, formerly Polly Beall, against Washington Beall, to have an account of money received by him, as the committee of the said Polly, his sister, who had been found to be a lunatic, in 1814, and was after-wards, in 1826, restored to the rights of a sane person, by the verdict of another jury.
In their original bill, the complainants exhibit a settlement made by their agent with Beall, on the 30th of January, 1826, showing a balance against him, at that time, of fourteen hundred and twenty seven dollars, two cents; and, alleging that they are ignorant of the amount of said Polly’s estate that had come to his hands, call on him for a full statement and settlement.
Beall, in answer, denies that he is chargeable with any thing more than was charged against him in the settlement referred to; but says he was entitled to credits not therein allowed, for boarding and clothing the said Polly; for services rendered in the management of her estate, and for one hundred dollars paid in adjusting certain matters relating to it; which credits, however, he does not claim unless the said settlement is opened. But he alleges that, on the 6th of April, 1826, he made a settlement with the complainants in person, and paid them twelve hundred and seventy dollars in full, and exhibits their receipt in full for that sum, in silver; which he says included a note executed by him to the complainant Polly, for one thousand dollars, which is yet out. He relies on this settlement, and alleges that it was fair, and fully understood by the complainants, and that in consequence of it, his principal vouchers have been lost or destroyed. He exhibits no voucher but the *421 receipt for twelve hundred seventy dollars, and states no particulars of the credits which, in addition to his note for one thousand dollars, made up the sum of twelve hundred and seventy dollars — the amount of the receipt. Nor does he attempt to explain how the balance appearing against him in the settlement of January, 1826, wag/ reduced, in less than three months, to twelve hunjirbd and seventy dollars; which seems to have been tííe sum charged against him in the settlement of April, 1826.
Deft, upon a settlement with hus band and wife— deft, having been her committee while she was single and a lunatic — obtained their receipt in full; which settlement receipt are impeached by their bill. — Neither of them could write or read; they were weak-minded, & it is not certain that she was free from the sentence of lunacy when the settlem’t was made ; the subscribing witness to the receipt knew nothing of the settlement: held, that, under these circumstances, the receipt shall not be taken as conclusive evidence of a fair settlement and satisfaction of the balance; nor as merging any liability of deft, which was not fairly brought forward,understood, and adjusted correctly. — But, a considerable reduction of the balance found against deft, on his first settlement, is admitted, (though it does not appear how it occurred,) upon the ground that comp’ts, at the next settlement, were not wholly incompetent; they now admit some items, and deft, may claim something on account of her support.
In an amended bill, the complainants state that, in making the settlement of April, 1826, Beall represented to them, that the balance due from him on the previous settlement was only about thirteen hundred dollars, or less. And this allegation being unanswered, must be taken as true. And is, when taken in connection with the amount stated in the receipt of April, 1826, sufficient evidence that the settlement then made, was based upon the idea that twelve hundred and seventy dollars was the sum found due in January preceding; and that one hundred and fifty seven dollars — the difference between the real and assumed balance, was not then brought into the account.
It appears that neither of the complainants could write, or read writing; that both of them were persons of weak mind, and easily imposed upon. It is not certain that the complainant Polly was free from the sentence of lunacy at the time of this settlement. And, although the receipt in full for twelve hundred and seventy, dollars is attested by a subscribing witness, he knew nothing of the settlement itself, which seems to have been made with the complainants alone. In consideration of these circumstances, and of the relation in' which Beall stood, as the trustee of one of the complainants, we have no doubt that the receipt and note of April, 18'26, are not to be taken as conclusive evidence of a full settlement and just balance; nor as merging any liabili *422 ty on the part of Beall, which was not then fairly brought forward and extinguished by claims on his part, understood and admitted. It is with some difficulty, therefore, that the credit of two hundred and seventy dollars, actually allowed in that settlement, is admitted. We have none in determining that, even admitting that credit to be just, the balance due was eleven hundred and fifty seven dollars, instead of one thousand dollars, for which Beall then executed his note to Polly Lyme. How the credit of two hundred and seventy dollars was made up, does not certainly appear, either from the pleadings or the proof,' and we allow it because the complainants, by whom it was admitted, were not absolutely incompetent to understand and negotiate ordinary business, and they now admit some items which may be sustained, and because Beall may have had some ground for claiming something for maintaining the lunatic before her marriage with Lyme, though neither the justice, nor amount, of any such claim is fully established by the proof.
Assuming, then, that Beall had in his hands, after the settlement of April, 1826, eleven hundred and fifty seven dollars of the money of the complainants, instead of one thousand dollars, for which he executed his note, it is clear that he is still liable to account for the larger sum, and to pay to the complainants, with interest, so much as he has not paid, unless they have in some manner lost or transferred their right to some portion of it.
As to the sum of one hundred and fifty seven dollars, considered as the excess of Beall’s liability beyond the amount of the note, there is no pretence either of payment or transfer.
But it is contended, that one hundred^ and sixty six dollars, sixty six and two third cents of the note has been paid, and that a new note given for the balance of eight hundred and thirty three dollars, thirty three and one third cents, was sold and assigned away by the complainants. And the questions of payment of one hundred and sixty six dollars, sixty six and two third *423 cents, and assignment of the residue, form the principal subject of controvei’sy in the pleadings and proof.
' a note having be$n glven by deft, for the bal-anee against him, thf. amount of siderably reduced renewals^pTn grounds not fair-lío^thé'comp’te appear to acqui-that,"considering *e condition of above8,' )ieS’their acquiescence is hardly sufficient to entitle deft, to allowance of those reductions. But vide post, PaSe426-Compl’ts — 1ms band and wife, charge, that a eer tain note which they held upon the defend’t, had been drawn from them, by the defendant, through the instrumentality of a third par ty, and remained (not satisfied) in deft’s possession, or under his control, if not destroyed. He denies that the person who obtained the note was his agent; denies that it is in his possession , and alleges that it was assigned to the party who re ceived it from comp’ts, and by him to another; and professes a willingness to pay it to the right ful holder. The last assignee, sub sequently made a deft, produces the note, and claims to be a bona fide assign-ee. But it appears that the first assignment was by the wife alone, in order that the assignee might collect the debt for her; and the subsequent assignee knew that she was a married woman; and, though he alleges that the assignin’t to him was upon a valuable consideration, he shows the payment .of hut a small sum. Under these circumstances, and others of minor importance stated in the opinion, it is held, that the pretended assignments shall be disregarded, and thepro-missor held accountable to the payees, for the am’t of the note. That there was no ground for a bill of interpleader. And, as the note had been once filed in the case — tho’ withdrawn by the pretended assign-ee -the court should proceed as though it still remained in the record.
*423 In the amended bill which has been mentioned, the complainants allege, that Beall procured the note for one thousand dollars from Polly Lyme, and executed one for a smaller sum: which he also obtained from her shortly after, and executed a third note, m lieu of it, for a still smaller sum; and that this was done without the knowledge or consent of Lyme. In his first answer on this subject, Beall states that the first note was given up because it did not bear interest, and that he executed one in lieu of it which bore interest; for the next renewal, he gives an unsatisfactory reason, having no relation to its amount; and admitting that Lyme did not know of these .transactions at the time, he alleges that he afterwards knew and approved of them. In a subsequent answer, he discloses the fact that, the first note i ,1 . , , had been made payable ten years after date; and he then also alleges, that he had made advances to ° Lyme previous to the last renewal of the note; in consequence of which, the last note was given fora smaller, and he says the true, amount. But he exhibits no vouchers, and makes no statement of the alleged advances. And as this credit was obtained under circumstances even more objectionable than those which attended the settlement of April, 1826, having been allowed by Polly Lyme alone, it is open to great suspicion, and no part of it would be admitted, if it were not that it may be inferred, from the acquiescence of Lyme, and from the failure of the complainants to object specifically to this credit, or to make any other objection to it, but that it was allowed by Polly Lyme, without the authority of her husband; that some advances were in fact made, and that Lyme acquiesced in the reduction of the amount of the note. For reasons, however, which have been alluded to, or are sufficiently'obvious from the facts stated, the acquiescence of Lyme and wife is not the sort of proof upon which Beall should rely in establishing the fairness and validity of his settlements with them. And the circumstances seem hardly sufficient to establish a credit for the precise sum *424 of one hundred and sixty six dollars, sixty six and two third cents.
But waiving this point for the present, we proceed to enquire whether the complainants have parted with or lost their right to so much of their demand as was included in the note for eight hundred and thirty three dollars, thirty three and one third cents. The complainants charge, that the note was obtained from them surreptitiously, by one Joseph Beall, as the instrument of Washington Beall; that it has been since in possession of the latter, and is still under his control, if not destroyed. W. Beall denies that J. Beall acted for him; but alleges that the note was sold, or assigned, to said Joseph, and that he does not know where it now is; but that he is willing to pay to the proper person, when it is produced. He does not answer satisfactorily, the specific charges and interrogatories on this subject, and there are in the cause some circumstances which tend to create the suspicion, that he may have co-operated in an attempt to deprive the complainants of this portion of their funds in his hands. And upon a rigid construction of his answer, the conclusion might be adopted, that the note was, if in existence, in his possession or control.
By a second amended bill, Joseph Beall was made a defendant, and proceeded against as a nonresident; but he never answered. And Washington Beall, in a third answer, states that he is informed that said Joseph left the note in the possession of one William Clayton; whether he assigned it to him for a valuable consideration or not, he says he does not know; but he makes Clayton a defendant, calls on him to produce the note, and prays that he and the complainants may interplead.
Clayton answered without service of process. He claims to be the owner of the note given to Mrs. Lyme, and alleges that she, by the consent or direction of her husband, as he is informed, sold and transferred it to Joseph Beall, who, for a valuable consideration, sold and transferred it to him; and that he is an innocent purchaser, for a valuable consideration; that he cannot say whether the note was legally assigned to J. Beall; but contends that. *425 if assigned by the husband, with intent to transfer it, it is good in equity; and that, if assigned merely to enable J. Beall, to collect the amount, he, being a purchaser from J. Beall for a valuable consideration, is entitled to the amount, &e.
The note, though not made an exhibit, appears to have been filed with the answer of Clayton, who seems to have obtained leave to withdraw it, which he did without leaving a copy; and having stated, at a subsequent term, in answer to a rule for its production, obtained by W. Beall, that it was lost, nothing more is seen or heard of it in the cause.
It appears from the answer of Clayton, that the note was assigned by Polly Lyme alone, and that Clayton knew that she was a married-woman. The terms of the assignment do not precisely appear, but it is well established by the proof, that it was made for the sole purpose of enabling Joseph Beall to collect the amount for the complainants, who had become dissatisfied with W. Beall. And as Clayton does no,t state any sum as the consideration given by him for the assignment to himself, and proves only about one hundred dollars given for a note of eight hundred and thirty three dollars, thirty three and one third cents, with several years’ interest, we are of opinion, that he has no pretence, even upon his own showing, to claim any interest in the note against the complainants. He is not a fair purchaser: he knew that the legal title of the note did not pass to Joseph Beall by the assignment; and he took the note, either knowing that J. Beall had no real interest in it, or trusting to his representations as to the purpose and consideration of the assignment to him. He must, therefore, abide by his confidence in Joseph Beall, who was not trusted with the actual legal title to the note, and must look to him, if he has been defrauded. It may be presumed, however, from the amount given, that he did not confide implicitly in J. Beall’s title, and he has no claims to the favor or regard of the Chancellor.
The deft. — sued for money which he had received as the committee of a female lunatic, is held to a far less strict account than his answers would justify, upon con «¡deration thathe has been allowed nothing for his services, nor any thing for the sup port of the lunatic.
It was, of course, unnecessary for the complainants to interplead with Clayton, who, on his own showing, had no right to interpose between them and their trustee or debtor, W. Beall. And, as the note had been in the power of the Court, where it should have remained, and as, even if it were not actually destroyed, as stated by Clayton, no one could acquire a valid interest in it, whereby to disturb W. Beall with any demand upon it; we are of opinion that the Court might and should have decreed in the case, just as if the note had remained in the record, or had been destroyed by actual cancelment in its presence.
It is sufficiently obvious, from what has been said, that, in our opinion, the complainants have not transferred or lost their right to receive that part of their demand which was represented by the note for eight hundred and thirty three dollars, thirty three and one third cents; and as they have also a certain right to one hundred and fifty seven dollars, which was not included in the settlement of April, 1826, and it is not entirely clear that the defendant W. Beall was entitled to the entire credit of one hundred and sixty six dollars, sixty six and two third cents, allowed him in the renewal of the notes, as above stated, we are of opinion that no more of that credit should be allowed than is sufficient to meet the sum of one hundred and fifty seven dollars aforesaid, and that he should have been decreed to pay to the complainants, one thousand dollars with interest from the 6th day of April, 1826.
A rigorous construction of the acts of W. Beall, and of his answers in this cause, would justify a much larger decree against him; but as he has been allowed nothing for his trouble in settling the estate devised to Polly Lyme, (except for going to Maryland on that business,) and nothing for maintaining said Polly before her marriage, and as the allegations of the complainants against their own acts and receipts, are not as specific as they might and should have been, we have thought that the basis adopted is, under all the circumstances, as just a one as could be assumed.
Husband & wife being entitled to a decree for a sum of money in her right, and both being imbecile and incompetent to protect themselves from imposition, this court directs that a trustee shall be designated by the decree, who shall receive the money for the wife; and, after paying all expenses incident to its recovery and other demands chargeable upon the fund, shall manage it for the support of the wife and her children,bom or to be born : the execution of the trust to be subject to the con trol of the court below.
' As this entire fund is a part of the estate of the complainant Polly, and the note for one thousand dollars was executed payable to her, and was intended to ensure, by the interest accruing thereon, the means of support and of maintaining and educating her children, and as sufficient ground for making such a provision appears in this cause, we are further of opinion, that the sum decreed in favor of the complainants should be directed to be paid to a discreet person, to be nominated by the Court, as the trustee of the said Polly, with instructions that so much of the said sum as may remain, after paying all reasonable and just expenses attending the recovery of the same, and also all demands justly chargeable thereon, or growing out of the application of funds to the support of said Polly, or the support and education of her children during the pendency of this suit, shall be held or vested in the name of said trustee, in trust for the said Polly Lyme and her children, born and to be born, for the purposes aforesaid — the execution of the trust to be subject to the superintendence of the Court, and the trustee to execute bond with security for its faithful performance.
The entire decree, as rendered by the Circuit Court, is therefore reversed, and the cause is remanded, wjth directions to render a decree and proceed thereon in conformity with this opinion, and with the instructions above given, and the complainants are entitled to their costs in this Court.